IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>            v.<br><br>FRANCIS RENE SÁNCHEZ-GERENA,<br><br>    Defendant. | CRIM. NO. 19-628 (RAM) |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant Francis R. Sanchez-Gerena's ("Defendant" or "Mr. Sánchez-Gerena") *Objections to the Pre-Sentence Investigation Report*. (Docket No. 73). For reasons set below, the Court **DENIES** the objections filed at Docket No. 73.

## I.   BACKGROUND

On October 2, 2019, Defendant's 1992 blue Nissan vehicle was stopped by United States Customs and Border Protection Officers conducting in-bound inspections on vehicles arriving from Santo Domingo, Dominican Republic. (Docket No. 70 at 4). When his vehicle was submitted to an inspection, the Officers noticed an anomaly in the vehicle's drive shaft. Id. Upon even further examination, it was discovered that the drive shaft contained eight (8) plastic wrapped packages which tested positive for methylenedioxymetham-phetamine (*i.e.* MDMA or Ecstasy). Id. at 5. Defendant was indicted on October 9, 2019 on two counts: 1) Possession with Intent to

Distribute a Controlled Substance (21 U.S.C. § 841(a)(1)); and 2) Importation of a Controlled Substance (21 U.S.C. § 952 and 960). (Docket No. 13 at 1-2).

On April 16, 2020, the United States Probation Office ("Probation Office") disclosed the Presentence Investigation Report ("PSR") for Defendant, stating that the packages discovered in his vehicle weighed approximately 1.47 kg with a converted drug weight of 548.34 kg. (Docket No. 30 ¶¶ 10, 19). Therefore, the converted weight of the drugs, which was over 400 kg but less than 700 kg, was consistent with a base level offense of 26 per Section 2D1.1(c)(7) of the United States Sentencing Guidelines ("USSG"). Id. ¶ 19. On May 13, 2020, the Probation Office disclosed an Amended Presentence Investigation Report ("Amended PSR") reiterating the same drug weight and offense level. (Docket No. 32 ¶¶ 10, 19).

On April 9, 2021, the Government filed the *United States of America's Objection to The Presentence Investigation Report and Sentencing Memorandum* ("*Government's Objection to Amended PSR*"). (Docket No. 62). It averred the base level offense of 26 was incorrect since it was grounded on a sample size of the total MDMA seized from Defendant. Id. at 1. Instead, the total amount seized was 1.47 kg, resulting in a converted drug weight between 700 kg but less than 1000 kg. Id. at 2. Accordingly, per the USSG's Section 2D1.1(c)(6), the offense level should be 28. Id.

Case 3:19-cr-00628-RAM   Document 79   Filed 06/10/21   Page 3 of 11
Criminal No. 19-628 (RAM)                                                    Page 3

As a result, on April 29, 2021, the Probation Office disclosed a Second Amended Presentence Investigation Report ("Second Amended PSR"), differentiating between the contents of the eight packages. (Docket No. 70 ¶ 10). Two of the packages contained pills (weighing 579.08 grams) while the others contained a brown powdery substance (weighing 892.66 grams). Id. Field testing of all packages was positive for components of MDMA. Id. It also stated that the packages had a converted drug weight of 735 kg, *i.e.* a drug weight of at least 700 kg but less than 1,000 kg. Id. ¶ 20. This weight was consistent with a base level offense of 28 per USSG's Section 2D1.1(c)(5). Id.

On May 18, 2021, Mr. Sánchez-Gerena filed his *Objections to the Pre-Sentence Investigation Report* ("*Defendant's Objections to Second Amended PSR*") (Docket No. 73). He first posits that the *Government's Objection to Amended PSR* is untimely. Id. at 2. This because it was filed nearly eleven months after the disclosure of the Amended PSR, in contravention of Fed. R. Crim. P. 32(f) and Local Rule 132(b)(3)(A), which hold that a party has fourteen (14) days to file objections to the PSR after its disclosure. Id. at 2-3. Defendant also claims the Second Amended PSR erred in finding the net weight of the seized MDMA was 1.47 kg, because that is the weight of the drugs with their packaging. Id. at 3. Instead, the weight of the packaging must be subtracted from the 1.47 kg weight *before* calculating the offense level. Id. at 3-4. Hence, the

Amended PSR's base offense level of 26 is correct. Id. at 4. Alternatively, Defendant holds that the factors in 18 U.S.C. §3553(a) warrant a sentence under the variance. Id.

## II. ANALYSIS

The Court is aware that Fed. R. Crim. P. 32(f) and Local Rule 132(b)(3)(A) impose a fourteen-day deadline to file objections. Fed. R. Cirm. P. 32(f)(1) states that "[w]ithin fourteen days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guidelines ranges, and policy statements contained in or omitted from the report." It is undisputed that the Government did not timely object to the PSR nor the Amended PSR. However, precedent from the First Circuit Court of Appeals ("First Circuit") and other Circuit Courts of Appeals, has upheld untimely Government objections so long as a defendant is given sufficient time to respond. For example, in United States v. Rolfsema, the First Circuit held that "**any prejudice resulting from the Government's late submission of information [regarding the PSR] was cured because [defendant] clearly had an opportunity to respond[.]**" United States v. Rolfsema, 468 F.3d 75, 78-79 (1st Cir. 2006)(emphasis added); see also United States v. Angeles-Mendoza, 407 F.3d 742, 749 (5th Cir. 2005) (finding that district court did not err when it allowed the government to untimely object to a PSR because it had "good cause" and the omission failed to prejudice

defendants at sentencing); United States v. Soto-Beníquez, 356 F.3d 1, 52 (1st Cir. 2003); United States v. Young, 140 F.3d 453, 457 (2d Cir. 1998). Here, any prejudice arising from the Government's late objection was alleviated because Mr. Sánchez-Gerena had an opportunity to respond. Furthermore, the sentencing hearing was continued on more than one occasion after the Government's motion. (Docket Nos. 66, 69 and 72).

In fact, per one of the requests for continuance, Defendant was put on notice that the case agent would be present during the sentencing hearing in the event his testimony was necessary. (Docket Nos. 68-69). To wit, during a hearing held on May 25, 2021, Defendant's attorney thoroughly cross-examined Special Agent Luis Rivera as to the weight of the seized drugs. (Docket No. 75). The Court also heard Defendant's arguments regarding objections to the weight used in the Second Amended PSR to calculate the base offense level. Id. Notably, although scheduled as a sentencing hearing, following the parties' proffers, a new sentencing date was scheduled for June 10, 2021. Id. Lastly, even assuming the prosecution had waited until sentencing to voice its objections, that does not mean the Government's objections would be disqualified either. *See e.g.*, United States v. Pérez-Ruiz, 421 F.3d 11, 17 (1st Cir. 2005) (finding no prejudice where the prosecution first raised objections to sentencing calculations the day of the sentencing hearing but where defendant was able to argue

on the merits against the new revised calculations). Accordingly, Defendant suffered no prejudice because of the Government's untimely objections.

Moving on to the objections regarding the weight of the drugs, here too Defendant has failed to convince the Court that the packaging of the drugs would result in a base offense level of 26 and not the 28 contemplated in the Second Amended PSR. (Docket No. 70 ¶ 20). Defendant posits that to properly calculate the base offense level, one must know the net weight of the controlled substance, which means the weight of the product without its packaging. (Docket No. 73 at 3).[1] Hence, Defendant avers that the base offense level in the Second Amended PSR is incorrect because it is based on the "gross weight" of 1.47 kg of MDMA, which includes packaging. Id. at 3-4.

The Supreme Court of the United States has held that packaging materials should not be included "in determining a sentence for drug distribution [. . .] because those items are also clearly not mixed or otherwise combined with the drug." Chapman v. United States, 500 U.S. 453, 463 (1991). Here however, Mr. Sánchez-Gerena has failed to show how the weight of the packaging would reduce the base offense level. In *Defendant's Objections to Second Amended*

---

[1] The First Circuit defines net weight as "the weight of the drug itself without the packaging[.]" United States v. Aitoro, 446 F.3d 246, 256 (1st Cir. 2006).

*PSR*, Mr. Sánchez-Gerena requests that the Court sentence him to a base offense level of 26, which was the suggested base offense level in the PSR and Amended PSR. (Docket Nos. 30 ¶19 and 32 ¶19). He claims once the packaging weight is removed from the weight of the seized drug amount, the converted amount falls between the range of 400-700 kg, which necessitates a base offense level of 26, and not 28 as it appears in the Second Amended PSR. Yet, he has failed to provide *any* evidence suggesting how much weight should be given to the eight plastic bags used as packaging for the drugs. Furthermore, he has failed to show the individual weight of these bags or how their combined weight would warrant a decrease from the unconverted drug weight of 1471.73 g to 1398 g , *i.e.* a difference of unconverted drug weight of 73.73 g.[2] This is the amount needed for the combined drug weight to fall below the 700 kg converted drug weight threshold in order to qualify for a base offense level of 26.

Even assuming *arguendo* that the Court were to consider the aggregate unconverted drug weight of 579.08 g of pills plus the *net weight* of the brown substance of 846.68 ± .024 g as stated in

---

[2] The Second Amended PSR states that the pills weigh a total of 579.08 grams and the brown powdery substance weighs a total of 892.66 grams. (Docket No. 70 ¶10). This results in a combined weight of 1,471.74 g, which the Second Amended PSR rounds down to an even 1.47 kg. Id. ¶ 11. The lab report shows pictures which also reflect these amounts. The report was submitted to the United States Customs and Border Protection Unit of the Department of Homeland Security by Louis Rivera and was introduced into evidence by the Government during the May 25, 2021 hearing. (Docket No. 75). To date, Defendant has failed to object to the same.

the first page of lab report for a total unconverted drug weight of 1425.76 g, Defendant has still failed to show how the weight of plastic packaging of the pills affects the base offense level. This because he has not shown that the weight of the plastic bags containing the pills is the 27.76 g or more needed to lower the unconverted drug weight to 1398 g or less and thus fall below the 700 kg converted drug weight warranting a base offense level of 26.

Further, case law does not support Defendant's allegations. *See e.g.,* United States v. Gonzalez-De Leon, 337 F. App'x 383, 384-85 (5th Cir. 2009) (holding that defendant failed to show that the difference between the gross weight and the net weight of the drugs was sufficient to affect his offense level). To wit, the Gonzalez-De Leon Court explained that "[t]here was no evidence in the record concerning the net weight of the marijuana, and [defendant] did not present any competent evidence to refute the PSR's quantity attribution (e.g., the actual or estimated weight of the packaging)." *See also* United States v. Orozco-Rodriguez, 60 F.3d 705, 707 (10th Cir. 1995) (finding defendant ineligible for a lower sentence because he had "never alleged that the wrapping materials weighed as much as thirty-four pounds" thus the court "found no reason to believe the weight of the wrapping materials was enough to set the weight of the marijuana below the eighty kilogram."). Even in cases where the parties provide estimates as

to the weight of the packaging, that does not mean a lower offense level is applicable. *See e.g.* United States v. Ortiz, 613 F.3d 550, 559 (5th Cir. 2010) ("We have been given various estimates by the parties as to how much of a reduction in the quantity of marijuana would occur by using different estimates of the weight of the packaging. None of those would remove the quantity from the newly established 700 to 1,000 kilogram range[.]") The Court held therein that "any possible error in the use of the gross weight of the marijuana would be harmless." Id.

The Government carries the burden of proving the drug quantity by "a preponderance of the evidence[.]" United States v. Ocean, 904 F.3d 25, 35 (1st Cir. 2018). However, the First Circuit has explained that to achieve this amount, a court "must make a 'reasonable approximation' of drug quantity, which 'need not be precise to the point of pedantry.'" Id. (quoting United States v. Demers, 842 F.3d 8, 12 (1st Cir. 2016). Hence, this Court can rely on the Second Amended PSR and the lab report to determine the drug quantity for purposes of the base offense level. (Docket No. 70 ¶¶ 10, 20). Moreover, as explained above, Mr. Sánchez-Gerena's attorney had ample time to cross-examine the agent who submitted the lab report during the hearing held on May 25, 2021. (Docket No. 75). The Court also notes that the lab report explained that "**[r]eported measurement uncertainties are statistically calculated as an expanded uncertainty with confidence level of approximately**

**95%.**" *See e.g.*, United States v. Dinh, 920 F.3d 307, 309-10 (5th Cir. 2019) (holding that to determine the relevant drug quantity, the district court could rely on a PSR based on a lab report stating that "[t]he statistical sampling plan used indicates a 95% confidence that at least 90% of the items will have the reported results."). In Dinh, the Court further found that "the findings of a lab report are generally considered to have sufficient indicia of reliability for consideration at sentencing without first requiring the government to explain the chemical equations and compounds underlying the results." Id. at 314. Therefore, "there was an adequate evidentiary basis, with sufficient indicia of reliability, for the district court to find that the drug quantity relevant for sentencing included all of the pills—or at least enough of the pills to reach a base offense level of 32." Id.

The Court sees no reason why it cannot reach an analogous conclusion here. As stated above, Defendant failed to refute the lab report. Hence, the Court can rely on the Second Amended PSR and lab report for sentencing purposes. *Cf.* United States v. Gomez, 818 F. App'x 907, 909 (11th Cir. 2020) (holding that the lower court's "approximation of the cocaine's net weight [...] was purely speculative" because "[w]ithout relying on any record evidence such as a laboratory report, photographs, or witness testimony, the District Court conclusively decided that the cocaine's packaging elements did not weigh any more than 100 kilograms.").

The Court in Gomez thus held that district court's approximation also erred because it had been "presented with a plausible suggestion by Gomez's counsel that the packages of cocaine may have been weighted so that they would sink if thrown overboard." Id. That is not the factual scenario in the case at bar. At the May 25, 2021 hearing regarding the nature of the packaging, the case agent testified that the bags were very thin. (Docket No. 75). The drug weight in Second Amended PSR is sustained by a preponderance of the evidence and Defendant did not undermine this finding by showing that deducting the weight of the plastic bags would result in a converted drug weight of less than 700 kg and the corresponding lower base offense level. Accordingly, the Court **DENIES** Defendant's *Objections to the Pre-Sentence Investigation Report* (Docket No. 73). Finally, the Court will not address the factors under 18 U.S.C. §3553(a) at this juncture.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of June 2021.

s/Raúl M. Arias-Marxuach
RAÚL M. ARIAS-MARXUACH
United States District Judge